UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:18-cr-21 |
| | ) | |
| TAQUAN CLARKE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Taquan Clarke filed a second motion to suppress evidence seized during the February 23, 2018, search of his apartment located at 2100 5th Avenue, Apt. D4, in Gary, Indiana. [DE 546.] (The first unrelated motion was denied [DE 527, 563].) Earlier in the morning of the search, the police executed an arrest warrant of Clarke at his apartment. Based on what was seen in plain view in the apartment while executing the arrest warrant, the authorities sought and received a search warrant for Clarke's apartment later that same morning.

The affidavit in support of the search warrant was signed and sworn to by Task Force Officer Christopher Gootee. The affidavit detailed Gootee's general experience with drug trafficking operations, and then details how two items were allegedly seen in plain view at the time of Clarke's arrest: a revolver and a clear plastic bag containing a green leafy substance. Another individual in the apartment claimed ownership of the gun (and that they had a permit to possess it), and although the Receipt for Property lists a green plant substance was found "on floor next to bed," the subsequent report

(FD-302), lists no green substance in plain view, but instead states it was found "in jean pocket." [DE 546-1 at 3; DE 546-2 at 2.]

Following an evidentiary hearing held on March 16, 2021, and after careful review of the briefs, evidence, and the Report and Recommendations found by Magistrate Judge Andrew P. Rodovich, I find that the search warrant was supported by probable cause. And even if the evidence found at the time of the search did not constitute probable cause to support the search warrant, the officers relied in good faith on the warrant. Therefore, the Second Motion to Suppress [DE 546] is DENIED and the Magistrate's Report and Recommendations [DE 568] is ADOPTED.

## Background

The indictment in this multi-defendant case charges Clarke in Count 1 with conspiracy to possess with intent to distribute cocaine base and heroin, and Count 15 for carrying, using, or discharging a firearm in relation to a drug trafficking crime and, in the course of the violation, causing the death of Kevin Hood.

This case used to be before Judge Theresa Springmann. She referred Clarke's second motion to suppress [DE 546] to Magistrate Judge Andrew P. Rodovich for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). [DE 558.] Judge Rodovich issued a report recommending the second motion to suppress be denied. [DE 568.] Clarke timely filed objections to Judge Rodovich's report and recommendations. [DE 571.] Then the case was reassigned to me.

I held a hearing on March 16, 2021, at which I gave Clarke the benefit of a

hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Four witnesses testified at the hearing: Jewel Coutee (Clarke's girlfriend who was in bed with him when he was arrested), the defendant Taquan Clarke, FBI Special Agent Andrew Chonowski, and Hammond Police Sergeant and FBI Task Force Officer Christopher Gootee.

On February 21, 2018, Taquan Clarke and eight other individuals were charged with conspiracy to possess with intent to distribute cocaine base and heroin. [DE 1.] The magistrate judge issued an arrest warrant for Clarke. [DE 12.] At about 6:00 a.m. on February 23, 2018, law enforcement investigators executed the arrest warrant at Clarke's apartment. As is customary, after entering the apartment, the officers did a protective sweep for officer safety reasons and then, once the scene was secured, they arrested Clarke. Agent Chonowski was not present during the arrest of Clarke; that was done by an entry team from the Indiana State Police. But after the arrest was completed and a search warrant was obtained, Chonowski served as the evidence custodian during the subsequent search. But even then, he did not actually see the items that were recovered. Instead, other agents brought him the evidence they found during the search, and he cataloged it. Chonowski testified that Special Agent Robertson brought him a clear baggie of what looked like marijuana that was found on the floor of Clarke's bedroom during the search.

Clarke argued in his motion that the search warrant is invalid because the affidavit in support of the search warrant stated that the marijuana was found on the floor and the handwritten receipt of property says the same, but the subsequently typed

3

FBI inventory states that item number 23 (the marijuana) was found in some jeans pocket. [DE 546-1 at 3; DE 546-2 at 2.] Clarke believes this is a material misrepresentation that affected probable cause. However, Agent Chonowski testified that he reviewed the forms and the photographs taken at the scene, and determined that the marijuana was truly found in plain view on the bedroom floor (not in the jeans), and that he made a typographical error when he was typing up his handwritten notes on Form FD-302. Agent Chonowski prepared a supplemental FBI 302 report that corrects this scrivener's error.

Clarke testified that he was in bed wearing boxers when the authorities entered his apartment that morning. He was placed on the floor. Clarke said one of the authorities asked him if had identification. He told them yes, it was inside his wallet in his pants pocket of the jeans on the floor. The officer asked if he could get it, and Clarke told him "yes." The officer grabbed his pants, went through them, and found Clarke's wallet and the bag of marijuana, which were both in his front right pocket. The officer asked Clarke if the marijuana was his, and he told him "yes." (It seems likely that the arresting officer who searched Clarke's pants may have simply left the marijuana next to the pants for the search team to recover later and this would explain the confusion about whether the marijuana was found in his pocket or on the floor. As we will see in a moment, it doesn't matter either way).

During the arrest of Clarke, the officers also saw a revolver sitting on top of a shelf in the kitchen. Another individual in the apartment said the gun was his, and that

4

he had a permit to posses it.

Later that morning, based upon what the officers who conducted the arrest saw in the apartment, TFO Goottee applied for a search warrant. The first eight paragraphs of the affidavit in support of the search warrant describe Gootee's general knowledge and experience with drug trafficking operations. [DE 579-1 at 7-9.] Paragraph 9 describes the federal arrest warrant received for Clarke, and paragraph 10 states "[i]nvestigators located a clear knotted bag containing a green leafy substance in plain view, on the bedroom floor of the room in which Clark[e] was located." *Id.* at 11. Due to his training and experience, Goottee believed it contained marijuana, and requested permission to seize it and search the remainder of the apartment for further evidence of narcotic possession. *Id.* Paragraph 11 also states that while investigators were conducting a safety sweep of the residence, "a revolver with a wooden handle was observed on top of the cabinets in the kitchen in plain view." *Id.*

In his objection to Magistrate Judge Rodovich's recommendation to deny the motion to suppress, Clark argues there is evidence that the marijuana mentioned in the affidavit was not in plain view, but was located during an illegal search prior to the issuance of the warrant, plus the omission of relevant facts like this apartment was not known for drug trafficking should have been included in the affidavit. Because of the testimony elicited from Clarke during the hearing that he consented for the officer to go into his jeans pocket, even if I take Clarke's version as true, the baggie of marijuana was lawfully found during his arrest.

5

## Discussion

"A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Gregory*, 795 F.3d 735, 741 (7th Cir. 2015) (citation omitted). Where the issuance of a search warrant is based entirely on an affidavit, like in this case, "the validity of the warrant depends solely on the strength of the affidavit." *United States v. Johnson*, 867 F.3d 737, 741 (7th Cir. 2017) (citing *United States v. Carson*, 582 F.3d 827, 831-32 (7th Cir. 2009)). A reviewing court gives "great deference" to the conclusion of the issuing judge that there was probable cause to support the warrant. *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013). When the affiant of the warrant is a law enforcement officer, the observations of other officers are "plainly a reliable basis for a warrant." *United States v. Griffin*, 827 F.2d 1108, 1111 (7th Cir. 1987) (quotation omitted).

To cut to the chase, the presence of marijuana in Clarke's apartment at the time of his arrest provided probable cause for the search warrant. *See United States v. Burnside,* 588 F.3d 511, 519 (7th Cir. 2009) ("Because we find that the police had probable cause to arrest [defendant], the officers were permitted to include in the warrant application the evidence they discovered during the search incident to his arrest."). Clarke tries to make a mountain out of a mole hill about the exact spot the marijuana was found. First, he points out a discrepancy in the paperwork, but Agent Chonowski very clearly explained how he made a clerical error when typing on the FD-302 form,

6

and that when he was given the bag of marijuana, as the evidence coordinator, he was actually told that it was found in plain view on the bedroom floor. Whether this is the true story, or whether I give credence to Clarke's version, the marijuana was lawfully spotted during his arrest. After all, Clarke testified that an officer asked if he had identification, Clarke told him it was in his jeans pocket on the floor, and when the officer specifically requested permission to go into the jeans, Clarke granted him consent. And Clarke conceded that he kept his wallet with his ID in the same pocket the marijuana was located. So even if the officer found the marijuana this way (instead of spotting it on the floor), he was entirely authorized to do so.

At the hearing, defense counsel argued that this true turn of events (finding the marijuana in Clarke's jeans pocket when looking for his ID), should have been disclosed in the search warrant affidavit. And maybe that is so, but at the end of the day, the marijuana was either lawfully spotted in plain view on the floor or was lawfully found after Clarke gave consent to look in his jeans. Under either version, it was lawfully seen at the time of arrest and it is a truthful (and not false or misleading) statement in the affidavit that marijuana was found in the bedroom. Finally, while the presence of the revolver by itself might not support probable cause to obtain a search warrant for the apartment, the gun's presence, in addition to the marijuana, and the nature of the charge in this case all add up to probable cause.

Finally, even if it could be said that the evidence seen at the time of arrest was insufficient to support probable cause to obtain the search warrant, the officers still

7

relied upon the warrant in good faith. "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897, 922 (1984). The only exceptions to this good faith rule are if the judge issuing the warrant abandoned his detached and neutral role, or the officer was dishonest or reckless in preparing the warrant affidavit, or the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008) (citing *Leon*, 468 U.S. at 923). Clarke has not made any such showing. Therefore, the officers were allowed to rely upon the search warrant granted in this case in good faith in searching the apartment, and suppression is not appropriate.

One last note. While I am adopting the report and recommendation of Magistrate Judge Rodovich because I agree with his conclusion that the search warrant was supported by probable cause, I respectfully disagree with some of his reasoning in the report. Judge Rodovich stated that "[e]ven if the evidence of the marijuana and the firearm is excluded from the affidavit, probable cause existed to issue the warrant," reasoning that Goottee's experience and determination that evidence of the narcotics conspiracy would be found in the apartment was sufficient. [DE 568 at 3.] I respectfully disagree with this portion of his report and recommendation. It's inconceivable that Goottee's experience and common sense alone could have provided the requisite probable cause to rummage through Clarke's home. To find otherwise would be to give law enforcement a virtual carte blanche to obtain search warrants on the basis of

8

experience alone. That's a Pandora's box that need not be opened. In all events, this discussion is academic at this point because the marijuana and revolver seen at the time of arrest *did* support the affidavit to obtain the search warrant in this case.

## Conclusion

In sum, I find the marijuana and revolver found during Clarke's arrest, pursuant to an arrest warrant, established probable cause to obtain a search warrant for the apartment. Moreover, the officers relied upon that search warrant in good faith. Based on all the foregoing reasons, I hereby ADOPT the Magistrate's Report and Recommendation [DE 568] and OVERRULE the Objections filed by Defendant Taquan Clarke [DE 571]. Defendant Taquan Clarke's Second Motion to Suppress [DE 546] is DENIED.

SO ORDERED.

ENTERED: March 31, 2021.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT