UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:18-CR-00021 |
| | ) | |
| TAQUAN CLARKE; | ) | |
| DEVONTAE MARTIN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Clarke's Motion to Sever Joint Trial from his co-defendants. [DE 725, 742, 744.] For the reasons set forth below, the motion to sever defendant Clarke from a joint trial [DE 725] and motion to supplement the motion to sever [DE 742] are GRANTED.  The motion to sever Clarke's trial based upon Rule 14 and Federal Rule of Evidence 806 [DE 744], which posits a different rationale for severance, is DENIED AS MOOT.

### Facts

This expansive drug conspiracy case originally involved 9 defendants.  All but 4 have pleaded guilty. Defendants Teddia Caldwell, Devontae Hodge, Devontae Martin, and Taquan Clarke remain, and they are charged by way of the third superseding indictment.  [DE 686.]  Clarke and Martin are both charged with a drug conspiracy, in violation of 21 U.S.C. §841(a)(1) and 846 (Count One) [DE 686 at 1]; and (2) knowingly carrying, using and discharging a firearm during and in relation to a drug trafficking

1

crime, and in the course of the violation, causing the death of Kevin Hood, such killing

being murder, as defined under 18 U.S.C. § 1111, in violation of 18 U.S.C. § 924(c)(1)(A)

(Count Fifteen). [*Id*. at 28.] Clarke's involvement in the drug conspiracy (Count One) is

predicated solely upon his participation in the murder of Kevin Hood (Count Fifteen).

Clarke moves to sever his trial from his co-defendants.

The government's allegations regarding the murder of Kevin Hood are as

follows. In 2016 or 2017, Caldwell and Martin discovered that Kevin Hood was dealing

cocaine in kilogram quantities. [*Id.* at 7.] In 2017, co-defendants Caldwell, Martin, and

Cornell Allen (who already pleaded guilty) followed Kevin Hood to a residence in

Gary, Indiana, but were unable to ascertain where he lived. [*Id.*] In July 2017, Caldwell

directed an associate to steal a black Chevrolet Tahoe SUV. [*Id*].  On July 28, 2017, co-

defendant Martin, armed with an AK-47 style rifle, rode in the stolen Tahoe with other

individuals to the "Shine On" Car Wash in Gary, Indiana with the intent to rob Kevin

Hood of cocaine and money. [*Id* at 8.]

Upon arrival, they entered the carwash under the pretense of cleaning the car.

[*Id.*] Once inside, Martin jumped out of the Tahoe, armed with the rifle, and attempted

to rob Hood. [*Id.*] A physical fight then ensued between Martin and Hood in which the

rifle was discharged. [*Id.*] The government then alleges that Clarke, mentioned for the

first time in the indictment, "walked up to Hood and shot him dead." [*Id.*] Caldwell and

Confidential Informant 2 were watching these events from a nearby parked vehicle. [*Id.*]

Following the murder, Caldwell, Allen, and Brinkley took the Tahoe to be burned. In

the indictment's second and final mention of Clarke, the government alleges that on

December 20, 2017, Caldwell confirmed to Confidential Informant 2 that Clarke was the

individual who killed Kevin Hood.  [*Id.* at 10 ("Boonie [Clarke's nickname] . . . [did] the

Hood shit")].

During the in person hearing on June 21, 2022, Caldwell indicated his willingness

to testify for Clarke, if he could testify at Clarke's trial and not be subjected to cross-

examination in a joint trial.  [DE 738.]  Clarke then supplemented his motion to sever

with an affidavit by Caldwell wherein he attests he does "not know Taquan Clarke"

and has "no relationship with [him]." [DE 742-1, ¶¶2, 3.] According to Caldwell, he has

"never spoken to Taquan Clarke," including "in person or on the phone," nor has he

sent or received calls from Clarke. [*Id.*, ¶2.] Finally, Caldwell claims to "have never met

Taquan Clarke before this case," adding that the first time he met Clarke was upon

being "arrested in this case," and that the second time he "saw" Clarke was at

arraignment. [*Id.*, ¶¶2, 4.]

### Discussion

Federal Rule of Criminal Procedure 8(b) provides that an indictment "may

charge 2 or more defendants if they are alleged to have participated in the same act or

transaction, or in the same series of acts or transactions, constituting an offense or

offenses." FED. R. CRIM. P. 8(b). There is a "presumption that co-defendants who are

indicted together are normally tried together." *United States v. Lopez*, 6 F.3d 1281, 1285

(7th Cir. 1993). But sometimes joinder results in unfair prejudice that deprives the

defendant of a fair trial. To address this issue, Federal Rule of Criminal Procedure 14

provides that "[i]if the joinder of offenses or defendants in an indictment . . . appears to

prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a).

A Rule 14(a) motion to sever should be granted only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). However, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* Rather, the defendant has the burden of showing *actual prejudice* from joinder. *United States v. L'Allier*, 838 F.2d 234, 241 (7th Cir. 1988). "Actual prejudice means that the defendant could not have a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal." *United States v. Moya-Gomez*, 860 F.2d 706, 754 (7th Cir. 1988) (quotation marks and citations omitted).

In addition, the defendant's showing of actual prejudice must be balanced against the policy encouraging judicial economy and the avoidance of lengthy, repetitious trials involving the same evidence and same witnesses. *See e.g., United States v. Spagnola*, 632 F.3d 981, 987-88 (7th Cir. 2011) (upholding denial of severance, in part because interests of judicial economy were not outweighed by chance of prejudice). This strong judicial economy interest in favor of joint trials is especially pronounced in the context of conspiracy charges. *See United States v. Magana*, 118 F.3d 1173, 1190 (7th Cir. 1997); *United States v. Cardena,* 842 F.3d 959, 981 (7th Cir. 2016) (citation omitted) ("there is a presumption that participants in a conspiracy or other criminal schemes should be

tried together, not only to economize on judicial and prosecutorial resources but also to give the jury a fuller picture of the scheme.")

Finally, the trial court is best positioned to balance the costs of conducting separate trials and the possible prejudice inherent in a single trial. *Moya-Gomez*, 860 F.2d at 754; *see also United States v. Holland*, 831 F.2d 717, 722 (7th Cir.1987). For this reason, the Supreme Court has held that "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

Clarke presents three distinct theories in support of his severance motion. The first theory is based on Clarke's desire to call his co-conspirator Caldwell as a witness in his case in chief. [DE 725 at 11; DE 752.]  His second theory is based on alleged prejudice to the jury were he to be tried along with Caldwell, who Clarke argues has a "markedly different degree[] of culpability." [DE 725 at 9.] Clarke's final theory is a novel argument predicated on Clarke's ability to impeach the credibility of the statement implicating Clarke in "the Hood shit" under FED. R. EVID. 806.  [DE 744.]  Because the first argument is dispositive, I will concentrate on that.

In a nutshell, the motion to sever is warranted because of the exculpatory testimony Caldwell has vouched he is willing to give at Clarke's trial. It is well settled that "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539; *see also United States v. Magana*, 118 F.3d 1173, 1190 (7th Cir. 1997).

The Seventh Circuit has provided a three-prong test for determining whether

severance is appropriate in this situation. "When a defendant requests a severance

based upon an allegation that a co-defendant will offer exculpatory testimony, the

district court considers: (1) whether the co-defendant's testimony would be exculpatory;

(2) whether the co-defendant would in fact testify; and (3) whether the testimony would

bear on defendant's case." *Magana*, 118 F.3d at 1190 (quotation marks and citations

omitted).

First, I find that Caldwell's testimony would be exculpatory for Clarke. Given

Caldwell's assertions in his affidavit, it is easy to conclude that Caldwell's putative

testimony would be exculpatory in Clarke's trial. In the third superseding indictment,

the government alleges not only that Caldwell and Confidential Informant 2 watched

the murder of Kevin Hood [DE 686 at 8], but also that on December 20, 2017, Caldwell

told Confidential Informant 2 that Clarke was the individual who killed Kevin Hood.

[*Id.* at 10 ("Boonie [a.k.a. Clarke]. . . [did] the Hood shit")]. Testimony from Caldwell

that he had never known, met, spoken with, or had any relationship with Clarke [*see* DE

742-1] would necessarily tend to rebut this evidence, and would thus be exculpatory.

Furthermore, to the extent the government indicated at the June 21, 2022 hearing that it

was planning on submitting evidence of phone records between Clarke and Caldwell

around the time of the murder, his testimony (as stated in the affidavit), would also be

clearly exculpatory for Clarke. Although Clarke's *ex parte* assertions, without anything

more, would not be sufficient to establish the exculpatory nature of Caldwell's putative

testimony, Caldwell's signed affidavit is a very strong indication that his testimony

would be exculpatory. *See*, e.g., *United States v. Lopez*, 6 F.3d 1281, 1285 (7th Cir. 1993)

(noting if the co-defendant himself had submitted an affidavit, the court would have been more likely to grant a severance).

In support of the second prong (whether the co-defendant will actually testify), Clarke alleges that "Mr. Caldwell is willing to testify but only at Mr. Clarke's severed trial." [DE 725 at 12.] It was made known to Caldwell at the June 21, 2022 hearing that Clarke had moved to sever his trial so that Caldwell could testify on his behalf. Immediately following this hearing, Caldwell produced an affidavit denying any "relationship" between himself and Clarke. [DE 742-1.] Then, during the hearing held on July 29, 2022, Caldwell again told the court that he was willing to testify at Clarke's trial, even if Clarke's trial proceeded before his own trial.  While there is no certainty that Caldwell will indeed testify at Clarke's severed trial (until the moment Caldwell actually takes the stand to do so), Caldwell has provided all assurances that he will testify.

In *Lopez*, the Seventh Circuit elaborated what is considered to be insufficient to satisfy this second prong of the test. There, the court found that a sworn affidavit from the movant's attorney that he was informed by co-defendant's counsel that co-defendant would be willing to testify on behalf of movant only after co-defendant was no longer subject to jeopardy "fails to satisfy the second part of this three-part test." *Lopez*, 6 F.3d at 1285. In reaching this conclusion, the Court took notice of the absence of an affidavit by the co-defendant himself, and concluded that "at most, [movant] presented *only a possibility* that [co-defendant] would testify to exculpate him at a separate trial." *Id.* at 1285 (emphasis added).  "If [co-defendant] himself had said this,

we might have reason to pause"). In so holding, the Seventh Circuit seemed to indicate

that in assessing whether a co-defendant providing exculpatory testimony is more than

a mere possibility, the court can consider *inter alia*: (1) statements made by the co-

defendant, (2) motivations, such as the risk of double jeopardy, hindering the co-

defendant from testifying if the trial is not severed, (3) whether the co-defendant has

voiced these motivations, and (4) whether the co-defendant has indicated that the

content of his testimony will actually be exculpatory. In the instant case, Caldwell's

proffer of the affidavit following the June 21st hearing, as well as his assurance at the

hearing held on July 29, 2022, tip the balance in favor of satisfaction of this prong.

Finally, the third prong is easily met and is not seriously called into question

because the nature of the putative evidence would be clearly relevant.  If Caldwell

testified he did not know, and had never seen Clarke before, this clearly is relevant as to

whether Clarke shot Kevin Hood (a scene which Caldwell supposedly watched from a

car across the street).

Concerns over judicial economy do not outweigh the prejudice that Clarke might

suffer if there was a single trial. Additionally, any considerations in favor of judicial

economy are diminished in the instant case because Defendant Martin has agreed to be

joined in a severed trial with Clarke. [DE 759 at 1.] The government requested that

Martin be joined with Clarke if the court grants the severance motion. [DE 749 at 11.]

The government alleges that the two murdered Hood together and further argues that

"the same witnesses would be called at their joint trial from responding police officers

to eye-witnesses." [*Id.*]  Therefore, judicial economy is still reached.

8

Finally, in light of the government's motion to disqualify Caldwell's counsel John Maksimovich [DE 765] and Caldwell's other attorney's representation to the Court on July 29, 2022, that he would not be ready to proceed to trial by himself on August 22, 2022 (the current trial date), it makes the most sense to proceed with the trial against Clarke and Martin first.  Caldwell and Hodge's trial has been continued until May 1, 2023, when Caldwell's attorney can be properly prepared for trial.

### Conclusion

For the reasons set forth above, Clarke's motion to sever joint trial and motion to supplement [DE 725, 742] are GRANTED. The motion to sever Clarke's trial based upon Rule 14 and Federal Rule of Evidence 806 [DE 744], is DENIED AS MOOT. Upon the government's request [DE 749] and defendant Martin's agreement [DE 759], Devontae Martin will be severed as well and will proceed to trial with Clarke on August 22, 2022. SO ORDERED

ENTERED: August 1, 2022.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT